**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**


MARC A. TITUS,                              )
                                           )
            Plaintiff,                      )
                                           )
      v.                                    )  NO. 2:01-CV-424
                                           )
ELGIN, JOLIET & EASTERN                     )
RAILWAY COMPANY OF                          )
INDIANA a/k/a EJ&E RAILROAD,                )
                                           )
            Defendant.                      )


## OPINION AND ORDER

Defendant Elgin, Joliet & Eastern Railway Company ("EJ&E") filed a Motion to

Reconsider this Court's June 16, 2005 Opinion and Order, which denied in part and granted in

part Defendant's Motion for Summary Judgment.  Defendant's Motion presents nothing new.

Thus, for the reasons stated in the Court's previous opinion [Doc. 88], and for the reasons below,

Defendant's Motion to Reconsider [Doc. 91] is **DENIED**.


## BACKGROUND

Plaintiff Marc A. Titus brought this action against EJ&E, his former employer, alleging

racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §

1981.[1]  Defendant EJ&E filed a Motion for Summary Judgment and after full briefing and oral

argument, the Court granted the Motion as it related to Titus's claims of tortious interference,

blacklisting and discrimination based on national origin, and denied the Motion relating to

Titus's claim of race discrimination under Title VII and § 1981.  Defendant EJ&E has now filed

---

[1]  *See* June 16, 2005 Order and Opinion regarding Defendant's Motion for Summary
Judgment for a description of the facts in this case.

a Motion to Reconsider the Court's partial denial of summary judgment.

## DISCUSSION

Defendant EJ&E raises two points in support of its Motion to Reconsider: (1) that neither party argued that this case should be analyzed under the direct method; and (2) Titus's racial discrimination claim cannot proceed under either the direct or indirect method.  Both points will be addressed in turn.

**I.      EJ&E's Claim That Neither Party Briefed Nor Argued This Case Under The Direct Method Of Proof Is Inaccurate.**

The Court disagrees with EJ&E's contention that Titus did not address the direct method of proof for intentional discrimination in his Response in Opposition to Defendant's Motion for Summary Judgment [Doc. 73].  It is true that Titus  "could have been more clear in drafting his response" to the summary judgment motion.  (Pl.'s Resp. to Def.'s Mot. to Reconsider 3.) Nevertheless, for the following reasons, this Court still reads Titus's response to the summary judgment motion as stating a claim under the direct method.

Specifically, Titus cites *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994) as support for his claim of intentional discrimination.  The Court in *Troupe v. May Dep't Stores Co.* identified three types of circumstantial evidence of intentional discrimination under the direct method of proof: (1) "suspicious timing, ambiguous statements oral or written, [and] behavior toward or comments directed at other employees in the protected group[;]" (2) evidence that "employees similarly situated to the plaintiff" but outside the protected class "received systematically better treatment[;]" or (3) "evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of

belief, a mere pretext for discrimination."  20 F.3d at 736.  Titus directly quoted the above

discussion regarding the direct method of proof in his response to the summary judgment

motion.  (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. 20.)  Accordingly, reviewing Titus's Response,

despite its unclear references to the direct method, should have provided adequate notice to

EJ&E that Titus was using the direct method to prove intentional discrimination.  This Court, as

it held in its prior Opinion, gives Titus the "benefit of the doubt" and concludes that Titus

sufficiently argued his allegation of intentional discrimination under the direct method.  (Opinion

and Order 7.)

**II.     This Court Finds That There Are Sufficient Genuine Issues of Material Fact To Permit Titus's Racial Discrimination Claim To Proceed To Trial.**

Defendant EJ&E argues that the facts in this case do not support a *prima facie* case of

racial discrimination under either the direct or indirect method of proof (Def.'s Mem. Supp. Mot.

to Reconsider 1.)  But as this Court has already held, although Titus is unable to establish a case

of racial discrimination under the indirect method of proof, "Titus has produced enough

admissible circumstantial evidence [under the direct method] as required by the court in *Troupe*

to create questions of material fact as to whether he was a victim of intentional discrimination."

(Opinion and Order 7, 9.)

A genuine dispute about a material fact exists only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, this Court must construe "all facts

and reasonable inferences from the record in the light most favorable to . . . the non-moving

party."  *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

The following facts, when viewed "in the light most favorable" to Titus, could lead a

reasonable jury to return a verdict for Titus at trial.[2]   First, several EJ&E employees testified

that, despite rules to the contrary, sleeping on the job was a common occurrence at EJ&E.  (*See*

Matlock Dep. 16:10-16; Brown Dep. 11:3-16; Austin Aff. ¶¶ 5-9.)  EJ&E argues that there is a

distinction between employees who are sleeping on the job and those that are *caught* sleeping.

(*See* Def.'s Mem. Supp. Mot. to Reconsider 4.)  This distinction is less than persuasive given just

how ubiquitous sleeping on the job was at EJ&E.  In addition, according to an EJ&E employee,

EJ&E management knew that employees took naps during their break times. (*See* Matlock Dep.

16:10-22.)  In fact, supervisors themselves, including Gerry Carr, also took naps.  (*See* Austin

Aff. ¶¶ 12-13.)

More importantly, the distinction drawn by EJ&E between sleeping on the job and being

caught sleeping on the job is demonstrably false in any event because employee Matlock (who is

white) was caught sleeping the same night as Titus and yet *nothing* was done to Matlock – not a

warning, not a letter of reprimand, and certainly not a termination.  (*See* Matlock Dep. 10:5-11:8,

21:5-7, 34:14-35:22, 39:18-24.)  In fact, the only thing that happened to Matlock was an

admonition from Gerry Carr, the person who caught him sleeping, that "you didn't see me

tonight."  (*Id.* at 34:14-35:3.)

Lonnie Gregory, a thirty-year EJ&E employee and the person in the locomotive with

Titus when he was caught sleeping, testified that he did not know of anyone who had been fired

for sleeping during break time.  (Gregory Dep. 4:14-15, 8:3-12, 14:21-24.)  Yet, on August 20,

2000, Carr caught Titus sleeping during break time, and he was fired.  (*See id.* at 8:10-14, 9:13-

---

[2]  EJ&E characterizes Titus's facts as "conclusory" and "inadmissible in opposition to a
motion for summary judgment."  (Def.'s Mem. Supp. Mot. to Reconsider 4.)  The Court
nonetheless finds that Titus pled sufficiently specific facts to show a genuine issue for trial.  *See*
Fed. R. Civ. P. 56(e).

4

18; Titus Dep. 62:15-20, 68:15-21, 71:15-19.)  As mentioned above, on that same night Matlock

was also caught napping by Carr during break time, but he was neither fired, reprimanded nor

given any demerits.  (*See* Matlock Dep. 10:5-11:8, 34:14-35:22, 39:18-24.)  Carr's refusal to

enforce the "no sleeping during break" rule to Matlock is especially questionable given that

Matlock was previously caught sleeping on the job.  (*See* Matlock Dep. 20:2-21:4.)[3]

EJ&E explains this apparent disparate treatment by pointing out that Titus was a

probationary employee while Matlock was not, and thus it made perfect sense to treat them

differently.  (Def.'s Mem. Supp. Mot. to Reconsider 5-6.)  As a result, according to EJ&E,

sleeping during break time is a bigger deal when it's done by a probationary employee than

when it is done by a non-probationary employee.  But this distinction once again falls apart when

the Court considers what happened to Gerald Austin who, like Titus, is black.  (*See* Austin Aff. ¶

1.)  Austin was a non-probationary employee (just like Matlock) who was accused of sleeping on

the job by Carr.  (*See id.* ¶¶ 2, 19.)  But instead of telling Austin that "you didn't see me tonight"

– as he told Matlock – Carr actually tried to photograph Austin while he was sleeping most

likely so that he would have proof of it.  (*See id.* ¶ 20.)  Austin was then written up for sleeping

on the job which resulted (due to earlier infractions) in his termination.  (*See id.* ¶ 21.)

EJ&E argues that Austin's threats and physical assault of Carr were the reasons for

Austin's termination.  (Def.'s Mem. Supp. Mot. to Reconsider 7.)  But according to Austin's

affidavit, Carr snuck onto the train when the lights were off and attempted to photograph him

sleeping.  Startled by the sense that someone was behind him, Austin abruptly turned around and

---

[3]  The Court still concludes that evidence of probationary employees being terminated for
safety rule violations generally "misses the mark" because it does not specifically involve
violations of the sleeping rule.  (Opinion and Order 9.)  Titus's case is based on EJ&E's selective
enforcement of the no-sleeping rule, not enforcement of safety rules generally.

his hand inadvertently hit Carr's camera.  (Austin Aff. ¶¶ 20-21.)  Thus, Austin's testimony could lead reasonable jurors to believe that he was terminated due to the selective enforcement of the no-sleeping rule based on race (as was Titus), and not because of Austin's physical assault of Carr.  Austin's affidavit therefore may provide circumstantial evidence to Titus of intentional discrimination, specifically "behavior toward or comments directed at other employees in the protected group[,]" *Troupe*, 20 F.3d at 736, and does not require a mini-trial of Austin's claims, as argued by EJ&E, (Def.'s Mem. Supp. Mot. to Reconsider 7-8).

The above evidence provided by Titus demonstrates that sleeping on the job was a widespread practice and that enforcement of the no-sleeping rule was at best intermittent.  More importantly, being caught sleeping during break is either a big deal – as EJ&E evidently thought it was when Titus and Austin were caught – or it is not, which is how EJ&E treated it when Matlock was caught.  At bottom, it is for a jury to sort out what EJ&E's motives were for the actions it took against Titus.

## CONCLUSION

For the reasons stated above, Defendant EJ&E's Motion to Reconsider [Doc. 91] is **DENIED.**

**SO ORDERED.**

ENTERED: October 20, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

6